UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CEDRIC CRY                                                                                              PLAINTIFF

v.                                                                              CIVIL ACTION NO. 3:15cv318-DPJ-FKB

SERGEANT R. DILLIARD, et al.                                                                  DEFENDANTS

ORDER

This § 1983 case is before the Court on the Motion for Summary Judgment [27] filed by Defendants R. Dilliard, Scotty Moore, and David Redd. For the reasons that follow, Defendants' motion is granted as to the official-capacity claims but otherwise denied.

I.     Facts and Procedural History

On January 27, 2015, Plaintiff Cedric Cry was arrested on a probation violation related to a prior felony conviction. He was taken to the Hinds County Detention Center in Raymond, Mississippi and placed in a holding tank with other inmates. At some point, officers notified the inmates that they were being moved to their cell blocks and asked them to pack their belongings. Cry told the officers he was "not supposed to be housed in this jail." Omnibus Tr. [26] at 8. Officers told him he would be housed in "the old folks zone," and Cry eventually "turned to go in the cell in the tank to get [his] mat." *Id.* at 9. When he turned to go into the cell, he claims that Defendant Dilliard "grabbed [him] and pulled [him] back out in the hallway" where Defendant Moore "grabbed [him] around [his] throat, pushed [his] head up against the wall . . . and put his knee in [Cry's] back." *Id.* After that, Cry claims Defendant Redd "came and grabbed [him] and hit [him] in [his] mouth and broke [his] tooth and ran [his] head into the wall." *Id.*

Cry filed this lawsuit against Dilliard, Moore, Redd, and others on April 28, 2015. After the dismissal of some defendants, Magistrate Judge F. Keith Ball held a *Spears* hearing on June 29, 2016. *See Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Following that hearing, Judge Ball clarified that Cry's claims against Dilliard, Moore, and Redd—the sole remaining Defendants—are based on his allegation that "he was beaten by three guards at" the Hinds County Detention Center. Omnibus Order [24] at 1. At the close of discovery, Defendants filed their motion for summary judgment. Cry responded in opposition [32], and Defendants filed a reply [34]. The Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make

credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

Cry filed a response to Defendants' motion, but he did not support his response by "citing to particular parts of materials in the record" to show the existence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1)(A). And while the Court "need consider only the cited materials, . . . it may consider other materials in the record" as well. *Id.* R. 56(c)(3). The record in this case includes Cry's sworn testimony given at the *Spears* hearing. The Court has considered the record as a whole in ruling on the summary-judgment motion.

III. Analysis

A. Exhaustion

Defendants argue that all of Cry's claims are barred by his alleged failure to exhaust. Under the Prison Litigation Reform Act, prisoners must exhaust any available administrative remedies prior to filing suit under § 1983. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'" and the rules that apply are those defined "by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88). Finally, "[s]ince exhaustion is an affirmative defense, the burden is on [Defendants] to demonstrate that [Cry] failed to exhaust available administrative remedies." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).

3

Defendants did not submit a copy of the grievance procedures for the Hinds County Detention Center along with their motion for summary judgment. Instead, they rely on the Affidavit of Warden Mary Rushing, who says, "In order to exhaust administrative remedies at Hinds County Detention Center, inmates must submit grievance forms which outline their complaints." Rushing Aff. [27-4] ¶ 4. Rushing says that she "personally conducted a search of Cedric Cry's Hinds County inmate file, and said search revealed that Mr. Cry did not file any grievances during the course of his 2015 incarceration." *Id.* ¶ 5.

For his part, Cry testified under oath at the *Spears* hearing that he submitted a grievance form regarding the January 27, 2015 incident. Omnibus Tr. [26] at 18. Defendants acknowledge this testimony, noting that it conflicts with Rushing's testimony. Defs.' Mem. [28] at 12. But at the summary-judgment stage, the Court must view the evidence in the light most favorable to the non-moving party—here, Cry. And because Cry says he filed a grievance, which is the only step in the exhaustion process Defendants have shown to exist, a question of fact exists as to whether he exhausted the available administrative remedies.

B.  Official-Capacity Claims

Defendants contend that, to the extent Cry asserts claims against them in their official capacities, those claims fail for lack of an articulated policy or custom that was the moving force behind the alleged constitutional violations at issue. *See Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997). Cry did not respond to this argument, which is meritorious. Summary judgment is granted as to any official-capacity claims.

C.  Individual-Capacity Claims and Qualified Immunity

Defendants argue that they are entitled to qualified immunity on Cry's excessive-force claims against them in their individual capacities. As the Fifth Circuit recently summarized:

> [T]he doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. This immunity protects all but the plainly incompetent or those who knowingly violate the law. Accordingly, we do not deny immunity unless existing precedent must have placed the statutory or constitutional question beyond debate. The basic steps of this court's qualified-immunity inquiry are well-known: a plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.

*Anderson v. Valdez*, No. 15-40836, 2016 WL 7667301, at *11 (5th Cir. Nov. 9, 2016) (citation and quotation marks omitted, punctuation altered).

"If the defendant's conduct did not violate [the] plaintiff's constitutional rights under the first prong, . . . he is entitled to qualified immunity." *Blackwell v. Laque*, No. 07-30184, 2008 WL 1848119, at *2 (5th Cir. Apr. 24, 2008). If the defendant did violate the plaintiff's constitutional rights, "the court then asks whether qualified immunity is still appropriate because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'" *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (quoting *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004)). "It is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 198–99 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Thus,

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Id.* (citations omitted). In other words, a plaintiff must demonstrate that "no reasonable officer could have believed his actions were proper." *Brown*, 623 F.3d at 253 (citation omitted).

Finally, "[o]nce an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* (noting that a qualified-immunity defense alters the usual summary-judgment burden of proof). With this framework in mind, the Court considers whether Cry has met his burden with respect to his excessive-force claims.

To establish a claim for use of excessive force under the Fourteenth Amendment, a pretrial detainee must show that officers "purposely or knowingly used . . . objectively unreasonable" force against him. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight" and may consider the following factors:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.*

A slightly different standard governs the objective reasonableness of Defendants' actions for purposes of the qualified-immunity analysis here, because *Kingsley v. Hendrickson* abrogated the rule previously followed by the Fifth Circuit. Under the law as it existed in January 2015, a pre-trial detainee alleging an excessive-force claim had to prove the force was applied "maliciously and sadistically for the very purpose of causing harm to the pretrial detainee, rather than in a good faith effort to maintain or restore discipline." *Kitchen v. Dall. Cty., Tex.*, 759 F.3d 468, 477 (5th Cir. 2014) (internal quotation marks and footnote omitted).

6

> i. Captain David Redd

Cry testified that Redd "grabbed [him] and hit [him] in [his] mouth and broke [his] tooth and ran [his] head into the wall." Omnibus Tr. [26] at 9. He says that, at the time the officers began their physical altercation with him, he was attempting to comply with their orders by retrieving his mat so he could be moved to a housing unit. He characterized his tone of voice as "calm[]" throughout the encounter. *Id.* at 8. And when Redd came over and hit him, Moore already had Cry's "head up against the wall" and his "knee in [Cry's] back." *Id.* at 9.

Redd tells a very different story. In his incident report, Redd says that Cry refused the order to move out of the holding tank and "became hostile." Incident Report [27-2].

> [Cry] stated "do what you gotta do" [and] he turned to go back in the holding tank. Lt. Scottie Moore and Sgt. Rodrique Dilliard reached to grab him back out to the hallway. He snatched away and I grabbed him. I attempted to place him in an escort hold position. Cedric Cry pulled away from me and said "get your motherfucking hands off me!" He turned to me in an aggressive manner with his fists balled. I attempted a brachial stun to the brachial plexus origin. I struck him in his mouth by mistake.

*Id.*

Redd bases his motion on his own version of the events. *See* Defs.' Mem. [28] at 7, 8. But the Court must view the evidence in the light most favorable to Cry. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866–67 (2014) (reversing summary judgment where court made credibility determination). Under that standard, the Court concludes that there is a question of fact as to Cry's conduct before the incident. If a jury concludes that Cry did nothing to provoke the use of force and that he was under Moore's control when Redd struck him, then the use of force would be excessive.

So the question becomes whether Redd's actions were objectively reasonable in light of clearly established law at the time of the January 27, 2015 incident. "[T]he right to be free from excessive force is clearly established in a general sense." *Bush v. Strain*, 513 F.3d 492, 502 (5th

7

Cir. 2008). But the Supreme Court has repeatedly warned that "'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft v. al–Kidd,* 563 U.S. 731, 742 (2011)). Instead, "the clearly established law must be 'particularized' to the facts of the case," *id.* (citation omitted), such that the officer has "reasonable warning," *Kitchen*, 759 F.3d at 479.

According to the Fifth Circuit, it is clearly established that "kicking, stomping, and choking a subdued inmate would violate the inmate's constitutional rights under certain circumstances." *Id.* (observing that "courts have frequently found constitutional violations in cases where a restrained or subdued person is subjected to the use of force"). The Fifth Circuit has also held that force applied "for no reason" against a compliant inmate is "clearly excessive to the need and objectively unreasonable." *Williams v. Luna*, 909 F.2d 121, 122, 124 (5th Cir. 1990) (internal quotation marks and citation omitted). In *Williams v. Luna*, like in this case, the plaintiff claimed that he was complying with an order to move to another cell when the officers used force for no reason. *Id.* at 124. Based on these authorities, the officers had reasonable warning that they could not use this degree of force for no apparent reason. Redd is not entitled to summary-judgment in his individual capacity based on qualified immunity.[1]

### ii. Lieutenant Scotty Moore

Cry says that while he was attempting to comply with the officers' directive, Moore "grabbed [him] around [his] throat, pushed [his] head up against the wall, drug [him] across the hall, pushed [his] head up against the wall over there and put his knee in [Cry's] back." Omnibus Tr. [26] at 9. The record does not appear to contain a version of the events from

---

[1] Of course the jury could reject Cry's factual claims and agree with the officers' version of events. But that is a decision for the jury.

Moore's perspective. Viewing the evidence in the light most favorable to Cry, the Court finds a question of fact that precludes qualified immunity at the summary-judgment stage. *See Williams*, 909 F.2d at 122, 124. Summary judgment is denied as to the individual-capacity claim against Moore.

### iii. Sergeant Rodrique Dilliard

Finally, Cry claims that Dilliard helped Moore pull him out of the holding tank at the outset of the altercation. He does not detail any force applied to him by Dilliard, and instead explained at the *Spears* hearing that he sued Dilliard "[b]ecause he sat right there and watched. He didn't even try to stop them or ask them to don't do that." Omnibus Tr. [26] at 14.

It is clearly established that "an officer may be held liable under § 1983 under a theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002)). Viewed in the light most favorable to Cry, the evidence presents a genuine dispute of material fact as to each element required for bystander liability. Again, if Cry was truly doing nothing wrong and was then subdued, the force the officers allegedly used while Dilliard watched would preclude qualified immunity. The motion is therefore denied on Dilliard's individual-capacity claim.

## IV. Conclusion

The Court has considered all arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Defendants' Motion for Summary Judgment [27] is granted in part as to the official-capacity claims asserted against Defendants. The motion is otherwise denied. The parties are instructed to contact the undersigned's

courtroom deputy, Shone Powell, within ten days of the entry of this Order to set the case for a pre-trial conference.

**SO ORDERED AND ADJUDGED** this the 16th day of May, 2017.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE